1                  **UNITED STATES DISTRICT COURT**

2               **NORTHERN DISTRICT OF MISSISSIPPI**

3

4

5  **UNITED STATES OF AMERICA,**    )
                            )

6        **Plaintiff,**     )        **CAUSE NO. 4:21CR66**
                            )

7           **VS.**         )
                            )

8  **MELVIN HILSON,**             )
                            )

9         **Defendant.**     )

10

11

12        **SENTENCING AS TO COUNT 1 OF THE INDICTMENT**
    **BEFORE UNITED STATES SENIOR DISTRICT JUDGE MICHAEL P. MILLS**

13        **THURSDAY, SEPTEMBER 1, 2022; 10:00 A.M.**
                **OXFORD, MISSISSIPPI**

14

15

16  **FOR THE GOVERNMENT:**

17      United States Attorney's Office
      KIMBERLY HAMPTON, ESQ.

18      900 Jefferson Avenue
      Oxford, Mississippi 38655-3608

19

20      U.S. Department of Justice
      CAMERON ALYSE BELL, ESQ.
      DOJ-Crt - Civil Rights Division

21      950 Pennsylvania Avenue
      Washington, DC 20530

22

23      U.S. Department of Justice
      SAMANTHA TREPEL, ESQ.
      DOJ-Crt

24      150 M St NE
      Ste 4CON - 7.1112

25      Washington, DC 20530

1  **FOR THE DEFENDANT:**

2      J L Smith Law Office, LLC
       JACQUELINE LEVETT SMITH, ESQ.
3      Post Office Box 1411
       Greenville, MS 38702
4
       Simmons & Simmons, PLLC
5      DERRICK T. SIMMONS, ESQ.
       Post Office Box 1854
6      Greenville, Mississippi 38702

7

8

9

10

11

12

13
   Proceedings recorded by official stenographic court reporter.
14 Transcript produced with computer-aided transcription.

15 ═══════════════════════════════════════════════════════════

16

17

18
                    **RITA DAVIS, FCRR, RPR, CSR #1626**
19               FEDERAL OFFICIAL COURT REPORTER
               911 JACKSON AVENUE EAST, SUITE 369
20                 OXFORD, MISSISSIPPI  38655

21

22

23

24

25

```
1   (CALL TO ORDER OF THE COURT)

2              THE COURT:  Mrs. Pennebaker, would you call the

3   docket?

4              THE COURTROOM DEPUTY:  Court calls Cause

5   No. 4:21CR66, United States of America v. Melvin Hilson.  This

6   is a sentencing as to Count 1 of the indictment.

7              THE COURT:  All right.

8         Who speaks for the Government?

9              MS. HAMPTON:  Kimberly Hampton, Your Honor.

10             MS. BELL:  Cameron Bell for the United States.

11             MS. TREPEL:  Samantha Trepel for the United States,

12  Your Honor.

13             THE COURT:  All right.

14        And for the defense?

15             MR. SIMMONS:  Derrick Simmons, Your Honor.

16             MR. SMITH:  Jacqueline Smith.

17             THE COURT:  And do you have your client with you?

18             MR. SIMMONS:  Yes, sir, Your Honor.

19             THE COURT:  All right.

20        And who do we have from probation?

21             MR. EVERILL:  Lonnie Everill with U.S. Probation,

22  Your Honor.

23             THE COURT:  And from Chamber's staff?

24             MS. AVERY:  Fatelia Avery, Your Honor.

25             THE COURT:  Glad to have you.
```

1          This is a sentencing in the case of the United States of

2    America v. Melvin Hilson.  Mr. Simmons, have you reviewed the

3    Presentence Report with your client?

4               MR. SIMMONS:  I have, Your Honor.

5               THE COURT:  Do you have any unresolved objections?

6               MR. SIMMONS:  No, Your Honor.

7               THE COURT:  Does the Government have any unresolved

8    objections?

9               MS. HAMPTON:  No, Your Honor.

10              THE COURT:  Are you ready for sentencing?

11              MR. SIMMONS:  I am, Your Honor.

12              THE COURT:  If you'd come forward, please.

13         (Parties complying)

14              THE COURT:  I'd ask the Government to come to this

15   podium here.

16              MS. HAMPTON:  (Complying).

17              THE COURT:  All right.

18        Mr. Hilson, on a previous day, you pled guilty to Count 1

19   of the indictment, which charged you with deprivation of rights

20   under color of law.  Is there anything you would like to say

21   before sentencing?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  And you may speak.

24              THE DEFENDANT:  I would like to publicly apologize to

25   the victim.

1          THE COURT:  Let me ask you -- you can take off that

2  mask to speak.

3          THE DEFENDANT:  Oh.  Yes, sir.  Thank you.  I would

4  like to publicly apologize to Mr. Towns and his family and my

5  family for the uncharacteristic-like behavior which I displayed

6  on that day.  That -- that type of characteristic that I

7  displayed doesn't define me as a person as a whole.

8      I think, maybe, I was dealing with some issues at that

9  time; but it still doesn't excuse it.  But that doesn't explain

10  my characteristic.  I'm the type of person that will help

11  anyone, anybody in any given situation.  It just -- it just

12  wasn't -- wasn't, you know, the norm for me.

13          THE COURT:  All right.

14      Mr. Simmons, did you have anything to say?

15          MR. SIMMONS:  Yes, Your Honor.  Mr. Hilson, Your

16  Honor, is a military veteran.  He served three tours of duty in

17  Afghanistan, Kuwait, and Iraq.  He's a lifelong resident of

18  Tallahatchie County in the Northern District of Mississippi.

19  As he indicated to this Honorable Court, he was out of

20  character on that particular day.

21      He made a mistake that I believe, in my representation

22  and, also, Attorney Jacqueline Smith's representation of him,

23  and knowing his family during this time, that it would never

24  happen again.

25      We understand, Your Honor, that this Honorable Court has

1    to look at the interests of the Government as well as look at

2    Mr. Hilson's background.  And we certainly -- he is remorseful.

3    He takes full responsibility for what he did.

4        That's the reason why we asked the Court to vary from the

5    18 to 24 months that was in the Presentence Report and, as we

6    indicated in our sentencing memo, to give him a probationary

7    sentence.

8        He has -- he's a father of five.  He has two minor

9    children, 15 and 8.  The eight-year-old lives with him.  And

10   he's asking this Honorable Court not to disrupt that

11   employment, but to also recognize his military service.

12       Which, the law allows the Court to look at his military

13   service in -- in varying or departing from the guideline range.

14   And, as this Honorable Court knows, in the U.S. Supreme Court

15   ruling in *Booker*, that the guidelines are, in fact, advisory.

16       There is no statutory minimum in this case.  And, because

17   of that, we are asking the Court to give Mr. Hilson a

18   probationary sentence and allow him to get the emotional and

19   mental help that he -- that he so desperately needs.  He's been

20   diagnosed with PTSD, nightmare disorders, and, also, anxiety

21   disorders.

22       And, so, we're asking the Court if the Court would

23   consider all of those things and the fact that he is in fact

24   remorseful, the fact that he was out of character on that day

25   and consider -- strongly consider -- a probationary sentence.

1          THE COURT:  All right.  Thank you.

2     Does the Government have anything to say?

3          MS. BELL:  Yes, Your Honor.  May I have just a

4     moment?  (Pause).  Thank you, Your Honor.  The Government

5     previously submitted its sentencing memorandum to the Court,

6     which lays out its arguments for today's sentencing and the

7     issues.  But I would like to briefly highlight just two points.

8          First, the defendant's assault on the victim was a

9     prolonged assault committed in front of other inmates and other

10    staff members.  And the victim is here today and would like to

11    address the Court.

12         He knew that he could not fight back or defend himself

13    because doing so would make the defendant's assault that much

14    worse for him and could result in the victim himself getting

15    into trouble and getting assault charges.

16         This assault sent a clear message to everyone who saw it

17    at Parchman prison, and everyone who heard about it, that

18    corrections officials at Parchman could be above the prison's

19    rules, above federal law, and above the U.S. Constitution.

20         Second, and importantly, the defendant was relying on a

21    culture of silence at the prison; and the notion that people

22    convicted of crimes would not be believed.  As a result, the

23    defendant wrote a false report and denied the assault to

24    investigators.

25         But for the existence of a video which corroborated the

1  victim's account, the defendant might have gotten away with

2  what he'd done.  His multistep scheme to obstruct justice

3  included writing a false report and writing up the victim for

4  falsely possessing contraband, a charge that likely would have

5  resulted, again, in false charges, or additional charges, for

6  the victim and punishment for him had the defendant's unlawful

7  conduct and the fact that the report was false gone

8  undiscovered.

9      So the defendant's unprovoked assault, which was purely an

10  abuse of his power and the power that we, as society, vest in

11  law enforcement officials, as well as the defendant's attempt

12  to cover up his unlawful conduct, warrants a 24-month sentence,

13  not a probationary sentence, which is sufficient, but not

14  greater than necessary, to achieve the purpose of sentencing.

15      THE COURT:  All right.  Did you say you had someone

16  that wished to speak?

17      MS. BELL:  The victim, Mr. Towns, is here today and

18  would like to address the Court.  His mother would also like to

19  address the Court, if the Court will permit that.

20      THE COURT:  I'll let him shortly speak.  I don't

21  think we need a lot of speakers.  But, if he wants to come up

22  and address the Court, he may.

23      MR TOWNS:  Thank you, Your Honor, for allowing me to

24  speak.  First, I'd like to thank God for today.  And thank you,

25  Judge Mills, for allowing this case in your courtroom.  I'd

1  also like to show my appreciation to Attorney General Kristen

2  Clarke, The Justice Department, Civil Rights Division, Acting

3  U.S. Attorney Clay Joyner for the Northern District of

4  Mississippi, Mississippi and (inaudible) Alexander, special

5  agent in charge (inaudible) special litigation counsel Matthew

6  Tribble, trial attorney counsel, Civil Rights Division; U.S.

7  Attorney Robert Mims, and the Northern District of Mississippi

8  Attorney Carlos Moore; and, last but not least, my mother,

9  Patricia Towns, and family.

10         Without your hard work and great ethics, this day would

11  not be possible.  You-all are my heroes.  I express my deepest

12  gratitude and respect to you all.  Thank you.  Since 2016,

13  every day has been a struggle, not only for me but also for my

14  family.

15         The numerous hospital visits, the sleepless nights, being

16  denied, running back and forth, and the constant fear of being

17  in danger.  This is something I wouldn't wish on my worst

18  enemy.  The fact that you have individuals who -- that

19  supposedly trust -- that you supposed to trust to protect,

20  serve, and honor the law but yet break the law because they

21  think they are above the law.

22         This had me thinking all law enforcement with badges were

23  all bad and could never be trusted.  For years, I struggled

24  with this.  But it brought me the realization that not everyone

25  that are law enforcement are the same.  You do have some good

1   ones. And it doesn't matter the color, the gender, the age, or

2   the religion.

3       And you-all have proven that today, to show that you are

4   true law enforcement that still exists. And it's showing the

5   public that crimes or behavior of such law officials will not

6   be tolerated.

7       It's truly an honor to witness the federal Government

8   taking action to help secure the public and inmates and

9   inmates' rights to be free from cruel and unusual punishment of

10   any kind.

11       Because, daily, I worry about my brother, who is currently

12   incarcerated right now in Greene County, Leakesville,

13   Mississippi. I pray daily that he doesn't be retaliated

14   against like he already has. That's how he got so far from

15   home in the first place by these same individuals.

16       And to have the audacity to be terminated and mow your way

17   back into the same Government job, taking on a higher position

18   as a deputy warden knowing what you and your gang had did, was

19   truly a slap in the face to me and all of America by the state

20   of Mississippi.

21       The Mississippi Department of Corrections, to uphold and

22   applaud and promote such behavior, this is devastating to know

23   things like this could be done. But I have witnessed firsthand

24   how cruel and heartless an individual can be who holds such

25   authority.

1    Also, the fact that the Mississippi Department of

2  Corrections shows no remorse, non-apologetic to hold any

3  responsibility for this whole incident.  Crime really scares

4  me, being bullied, assaulted, beaten, humiliated, and treated

5  less than a human being, with this type of behavior continuing

6  to be promoted.

7    It's so much that I could tell you that I seen and

8  witnessed and heard in my 10 years of being incarcerated; that,

9  even until this day, I know you can be hurt or even killed

10  within minutes by individuals who portray to be honest and true

11  law enforcement is scary.

12    I refuse to go on and on discussing my conditions because

13  I understand this is a problem that should grow great concern

14  because of the damage that he has caused.  I refuse to allow

15  myself to keep being broken down.

16    So I'm here asking for solutions because I'm only one of

17  the ones you seen being assaulted, but more inmates have

18  suffered from the same hands.  Each inmate housed in the

19  Mississippi Department of Corrections deserves to have their

20  rights and human rights protected and free from cruel and

21  unusual punishment.

22    As of me now being a citizen, we need individuals

23  representing a law badge with honor, pride, dignity, and, most

24  of all, integrity, even when no one is around.  Those are the

25  individuals who deserve a badge, because they are well-trained

1   to protect and serve by upholding the law, not to purposely

2   punish or abuse.

3          As for the defendant, I will not address a coward.  You

4   don't deserve any reaction from me.  You have caused enough

5   pain and suffering to me, my family, and friends.  And, as you

6   and your gang ran the prison, now I see you alone today; and I

7   can witness you being held accountable and responsible for your

8   crimes.

9          Thanks again, Courts, for responding to this case and,

10  Judge Mills, allowing me the opportunity to speak.  God bless.

11             THE COURT:  All right.  Thank you.

12             MS. SMITH:  Your Honor, may I have the Court's

13  indulgence?  May I have the Court's indulgence to speak with

14  Mr. Simmons one moment?

15             THE COURT:  You want to do what?  I can't understand

16  you.

17             MS. SMITH:  I'm sorry.  The Court's indulgence to

18  speak to Mr. Simmons for, like, 10 seconds.

19             THE COURT:  Yeah.  Okay.  (Pause).

20             MS. SMITH:  There we go.  Thank you, Judge.

21        (Off-the-record discussion)

22             THE COURT:  All right.  Anything further?

23             MS. BELL:  Your Honor, I would just note that

24  Mr. Towns' points indicate how -- how much this has affected

25  him, how much he was afraid of what had happened, and how much

1 he took to heart the fact that the defendant abused his

2 position of power in the way that he did.

3        THE COURT:  Okay.  Well, that's well understood.

4     Anything further?

5        MR. SIMMONS:  Yes, Your Honor.  Incarceration, Your

6 Honor, is not necessary to deter future crimes.  Mr. Hilson has

7 publicly apologized and is very remorseful for his actions.

8 Certainly, Your Honor, there was not a gang inside the

9 Mississippi Department of Corrections as it relates to

10 Mr. Hilson and the other officers that he worked with.

11     And he simply, as we have stated, made a mistake.  And

12 that's the reason why he accepted responsibility at an earlier

13 date in front of this Honorable Court; and that's the reason

14 why he's here now.

15     And this Court has the inherent power, Your Honor, to look

16 at, also, Mr. Hilson's background.  His first interaction with

17 law enforcement certainly was a form of starting

18 rehabilitation.  And, if the Court considers and grants a

19 probationary sentence, certainly he'll be monitored by the U.S.

20 Probation and Parole, which he has been during pretrial

21 release.

22     I mean, you just never will see Mr. Hilson again.  He

23 takes full responsibility for his actions.  He's just asking

24 the Court to allow him, in an outpatient setting, to get the

25 mental and emotional help that he so desperately needs and,

1   also, to continue his employment working in Tallahatchie

2   County.  And, so, that's why he's asking for that probationary

3   sentence, Your Honor.  Thank you.

4            THE COURT:  All right.  Thank you.

5        Well, I'm about to state the reasons for your sentence,

6   Mr. Hilson.  I will adopt the Presentence Investigation Report

7   without change.  If I went under the statute, you could receive

8   up 10 years' imprisonment, up to a $250,000 fine; 0 to 3 years'

9   supervised release; and a $100 special assessment.

10       The guidelines provide for a total offense level of 15, a

11  criminal history category of Roman numeral I.  And the

12  guidelines provide for a sentence of 18 to 24 months, a

13  supervised release range of 1 to 3 years, and a fine of 7500 up

14  to $75,000.  I believe, in this case, Judge Aycock has entered

15  a judgment, a civil judgment, for his damages.

16       Is that correct, Lonnie?

17           MR. EVERILL:  I don't know that anything's been

18  ordered yet, but --

19           THE COURT:  I think it has.

20       Where is that order, Mrs. Pennebaker?  I have -- there it

21  is.  In Civil Action No. 4:19CV70-SA-JMV, the facts in this

22  case are restated, and judgment was awarded in favor of

23  Mr. Towns in the amount of $250,000; actual damages and

24  punitive damages in the amount of $50,000.

25       Is that your understanding, Mr. Simmons?

1        MR. SIMMONS:  It is, Your Honor.

2        THE COURT:  Are you aware of that?

3        MR. SIMMONS:  Yes, sir.

4        THE COURT:  Okay.  So, since a civil judgment has

5   been entered, I don't see any need to enter an additional

6   judgment in this case.

7        MS. SMITH:  Your Honor, excuse me, if I may.  I

8   believe that Mr. Hilson was released from that civil case.

9        THE COURT:  Okay.

10       MS. SMITH:  And, so, the civil judgment -- and I

11  apologize to the Court.

12       THE COURT:  Then I may need to -- need to add

13  another -- another penalty, then.

14       MS. SIMMONS:  As I understand it, Your Honor,

15  Mr. Towns was actually already in the facility where it

16  happened because of what had happened to him earlier.  And --

17       THE COURT:  I'm looking at a judgment dated

18  August 23rd, 2022 awarding damages against Melvin Hilson for

19  $250,000; and punitives against Melvin Hilson for 50,000.  Are

20  you not aware of that?

21       MR. SIMMONS:  I've read it, but Mr. Hilson says he's

22  not aware of it.

23       THE COURT:  Well, I'm going to suggest all of you

24  read it.

25       MR. SIMMONS:  Yes, sir.

1           THE COURT:  It's -- it looks to me like an order and

2    a judgment against your client and a Mr. Perry "SU-rel" B.

3    Perry.  Or "SOR-rel."  So how does that -- it seems to me if

4    they've got a judgment against him, Lonnie, that there's no

5    need to add an additional judgment.

6           MR. EVERILL:  I'm not seeing -- can you give me the

7    case number again, Your Honor?  I'm not seeing anything in ECF

8    that attaches his name to it.  He might have originally been on

9    that case.

10          THE COURT:  Well, it says "Towns is hereby awarded

11   compensatory damages against Melvin Hilson."  Is that our

12   defendant?

13          MR. EVERILL:  It is, Your Honor.

14          THE COURT:  And Sorrell B. Perry in the amount of

15   $250,000; jointly and severally.  He's awarded punitive damages

16   against Melvin Hilson in the amount of $50,000.  So I'm

17   assuming that's been entered.  Now, I don't know if I -- it may

18   be appealed or --

19          MR. EVERILL:  Do you mind giving me the case number,

20   Your Honor?  Because, when I search under Mr. Hilson's name,

21   I'm not seeing anything.

22          THE COURT:  4:19CV70-SA-JMV.

23          MR. EVERILL:  All I'm seeing so far is older cases

24   that were with the Mississippi Department of Corrections that

25   also list Mr. Hilson.  But give me one second, and I'll look at

1   that case number as well.

2         THE COURT: Okay. Well, I'll hear from Lonnie on

3   that. I don't think there's a need for two fines, is what I'm

4   trying to get to.

5         MR. SIMMONS: I agree, Your Honor.

6         THE COURT: But, apparently, nobody's read the other

7   case, except me. That's sometimes troubling, isn't it,

8   Mr. Simmons?

9      In determining the sentence, I have considered the

10   advisory guideline range, the statutory penalties, and the

11   sentencing factors in 18 U.S.C. 3553(a)(2). I see no reason to

12   depart from the sentence called for by application of the

13   guidelines in this case since the facts as found are of the

14   kind contemplated by the Sentencing Commission.

15      I have read the letters and the statements provided by the

16   attorneys. I've looked at your record, Mr. Hilson. And, if

17   you had asked me to pick one person in Tallahatchie County who

18   was on an arc for success, I would have picked you. Your

19   background and history is outstanding.

20      You've been, as far as I can tell, a good law enforcement

21   officer. You served two tours of duty in Iraq and one in

22   Afghanistan. You had a good collegiate record, I think a 3.22

23   GPA. There was no reason for you not to succeed.

24      And, because of your background and the opportunities that

25   you had taken advantage of, you had put yourself in a position

1  to where you were a leader in the community.  You were someone

2  that the people looked up to, not only because of the badge you

3  had but because of who you were.

4      And, when you're in that position, there's a lot of

5  responsibility that goes with it; and you have to -- you have

6  to live up to it.  And I think of all the people -- of all the

7  defendants that I've had before me, this is about the saddest

8  case I've seen, because you had it all.  You absolutely had it

9  all.  You had a great career, a great opportunity, a lot of

10 people who believed in you.

11     I do not understand why you attacked -- let's see.  What

12 was his name?  Let me get this right on the record.  Mr. Towns.

13 I wanted to say Townsend.  I don't understand it.  And I've not

14 understood it any better having heard you speak today.

15     You kept referring to it as circumstances.  And we say

16 circumstances when we don't want to deal with what we did.

17 It's almost like shifting the responsibility to someone else.

18 So I'm not sure that you've yet come to terms with the

19 circumstances that you got yourself involved in.

20     But what you did was you had a man who was defenseless

21 before you, and you hit him in the head with your fist.  And,

22 when he went down, you pulled him up; and you hit him again.

23 And you did that continuously.  It was all caught on video.

24     You later, then, filed false reports.  So you compounded

25 your situation.  It shows that you had every intent of covering

1  up what you had done.

2       Do you know, Mr. Simmons, why we call it the penitentiary?

3            MR. SIMMONS:  No, Your Honor.

4            THE COURT:  You don't?  Well, it's because, when you

5  get an opportunity to spend some time there, that you should

6  seek penitence.  And it's not a place where people should be

7  sent to be randomly beaten or bullied or taken advantage of,

8  but a place where they think about how they got themselves

9  there and hopefully come out of it a better person.

10      Saying that, Mr. Hilson, I think you were a pretty good

11 person before you got yourself in this situation.  Time will

12 tell.  Time will tell.  But you're going to have an opportunity

13 to seek penitence.

14      The reason for that is the violence that you exhibited.

15 That violence was undeserved.  You took advantage of a man who

16 was defenseless.  He was defenseless because of the

17 circumstances he was in.  You used the power of the Government

18 and your own authority to take advantage of him.

19      The rule of law says that you must suffer the

20 consequences.  We live in a society today where many people

21 think they're above the law.  There are daily challenges to the

22 rule of law throughout this country.

23      The law must stand up.  The law must be strong.  It must

24 send a message.  And all of the people who are in the

25 defenseless circumstances that Mr. Towns was in are watching

1  today to see if the law is fair, if it's equal, if there is

2  such a thing left as justice.

3       And it is so disappointing to me that you have found

4  yourself on this end of it, on this side of the law.  But you

5  did it.  No one else did it.  It was your choice, not only to

6  do it but to try to cover it up.  So there must be -- there

7  must be consequences for these circumstances we find ourselves

8  in.

9       This will be your sentence:  Pursuant to the Sentencing

10  Reform Act of 1984, it is the judgment of the Court that the

11  defendant, Melvin Hilson, is hereby committed to the custody of

12  the Bureau of Prisons to be imprisoned for a term of 24 months

13  on Count 1 of the indictment.

14       Upon release from imprisonment, the defendant shall be

15  placed on supervised release for a term of 3 years.  He shall

16  comply with the following mandatory conditions:  He must

17  cooperate in the collection of DNA as directed.

18       He shall comply with the standard conditions that have

19  been adopted by this Court and the following special

20  conditions:  The defendant shall submit his person, property,

21  house, residence, vehicle, papers, computers, other electronic

22  communications, or data storage devices or media or office to a

23  search conducted by the U.S. Probation Officer.

24       Failure to submit to a search may be grounds for

25  revocation of release.  He shall warn any other occupants that

1  the premises may be subject to searches pursuant to this

2  condition.  He shall provide the probation officer with access

3  to any requested financial information.

4       He shall not incur new credit charges or open additional

5  lines of credit without approval of the probation officer.  He

6  shall participate in a program of mental health treatment as

7  directed by the probation officer.

8       Lonnie, do you have a recommendation on restitution based

9  on this order?

10         MR. EVERILL:  Yes, Your Honor.  And, looking at it

11  further, it looks like that was just entered on August 23rd.

12  And part of the confusion is I believe who -- the order does

13  say "Hilson," but it's never been updated in ECF to show his

14  true name.  It's, I believe, referencing him as Officer

15  Hilton --

16         THE COURT:  Okay.

17         MR. EVERILL:  -- H-i-l-t-o-n.  But it does appear

18  it's him.  It looks like, essentially, nothing was ever

19  responded to and, so, that judgment was eventually entered, so.

20         THE COURT:  Okay.  Do you see the necessity of

21  entering another --

22         MR. EVERILL:  No, Your Honor.  I think since

23  that's --

24         THE COURT:  All right.  I'm going to let that civil

25  action order stand as far as restitution because I don't see

1  the need for two orders.  And Judge Aycock is very good at

2  collecting those, so I'll leave that alone.  I'm going to say

3  that the order entered and the civil order shall stand as

4  restitution in this case for the benefit of the victim in this

5  case, who we've listed as J.T.  It's Mr. Towns.  But we're

6  going to adopt that civil order in this case.

7       There was a plea agreement where he agreed to pay

8  restitution immediately.  Have you addressed that, Mr. Simmons?

9          MR. SIMMONS:  Agreed to pay restitution, Your Honor?

10         THE COURT:  It says -- was it -- did he agree to pay

11  it in the plea agreement?

12         MR. SIMMONS:  He did, Your Honor.

13         THE COURT:  But did you have an amount?

14         MR. SIMMONS:  No.  No, Your Honor.

15         THE COURT:  I tell you what, I'm going to order,

16  under the plea agreement, he pay $10,000 immediately; and the

17  rest of it be paid pursuant to the terms of that order, so

18  that's going to be my order.

19         MR. SIMMONS:  Yes, sir.

20         THE COURT:  Because you agreed to do that.  I'm not

21  going to order an additional fine because of his inability to

22  pay.  I am going to order that he pay the U.S. District Court

23  Clerk's Office, Northern District of Mississippi, a special

24  assessment of $100, which is due immediately.

25       He has expressly waived his right to appeal the conviction

1  or sentence imposed in this case, except to claims related to

2  prosecutorial misconduct or ineffective assistance of counsel.

3       Mr. Hilson, do you understand the sentence I've just

4  stated?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  And I'm going to tell you -- do you want

7  to remain out on bond and report to the institution on your

8  own?

9            MR. SIMMONS:  Yes, Your Honor.

10           THE DEFENDANT:  Yes.

11           THE COURT:  I'm going to let you get there on your

12  own.  I'm going to designate November the 7th, 2022 for you to

13  report.  The clerk's office will notify you of that

14  institution.  But, so that we have a record, I'm going to ask

15  you to sign a voluntary surrender form; and I'll ask your

16  attorney to witness it.

17       (Parties complying)

18           THE COURT:  Let that be entered.  You'll be notified

19  of where to report, and I'm going let you get there on your

20  own.

21       Is there anything further to take up at this time?

22           MS. BELL:  No, Your Honor.

23           THE COURTROOM DEPUTY:  The remaining counts.

24           THE COURT:  Are there other counts?

25           MS. BELL:  Oh.  Yes.  We would like to dismiss the

1   remaining two counts.

2           THE COURT:  All right.  Those will be dismissed.

3       Anything further from the defense?

4           MR. SIMMONS:  No, Your Honor.

5           THE COURT:  Well, I wish you the best of luck; I do.

6   Court will be in recess.

7                   (THE HEARING ENDED AT 10:34 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4              I, Rita Davis, Federal Official Realtime Court

 5   Reporter, in and for the United States District Court for the

 6   Northern District of Mississippi, do hereby certify that

 7   pursuant to Section 753, Title 28, United States Code that the

 8   foregoing is a true and correct transcript of the

 9   stenographically reported proceedings held in the

10   above-entitled matter; and that the transcript page format is

11   in conformance with the regulations of the Judicial Conference

12   of the United States.

13

14

15              Dated this 8th day of April, 2024.

16

17

18

19              /s/ Rita Davis _____
                RITA DAVIS, FCRR, RPR, CSR #1626
20              Federal Official Court Reporter

21

22

23

24

25
```